IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN W. COSTELLO, not individually, but as Litigation Trustee under the Comdisco Litigation Trust, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 05 C 0726 |
| v. | ) ) | Judge Robert W. Gettleman |
| JULIUS G. HALLER | ) ) | |
| Defendant, | ) ) ) | |
| | ) | Reassigned for preliminary proceedings: |
| JOHN A. BLAIR, | ) | 05 C 0732 |
| BRYANT COLLINS, | ) | 05 C 0728 |
| DAVID S. COONS, | ) | 05 C 0739 |
| CHARLES A. DALE, | ) | 05 C 0766 |
| ORRY D. DUBOIS, | ) | 05 C 0780 |
| CLAUS DUERR, | ) | 05 C 0737 |
| JAMES D. DUNCAN, | ) | 05 C 0789 |
| HAROLD L. FINKEL, | ) | 05 C 0771 |
| THOMAS FLOHR, | ) | 05 C 0778 |
| ALLEN J. GRAHAM, | ) | 05 C 0735 |
| STEVEN R. GRUNDON, | ) | 05 C 0763 |
| MICHAEL F. HERMAN, | ) | 05 C 0731 |
| JOSEPH D. HOLD, | ) | 05 C 0782 |
| JAMES D. JENKS, | ) | 05 C 0770 |
| JEFFREY D. KNAUS, | ) | 05 C 0772 |
| MICHAEL G. MCFARLAND, | ) | 05 C 0733 |
| STEPHEN J. MCFARLAND, | ) | 05 C 0769 |
| KEITH M. OLENEK, | ) | 05 C 0761 |
| LYSSA K. PAUL, | ) | 05 C 0776 |
| MIKE J. POISELLA, | ) | 05 C 0736 |
| THOMAS J. PRENDERGAST, | ) | 05 C 0727 |
| DEAN J. PROKOS, | ) | 05 C 0767 |
| PAUL SANFILLIPPO, | ) | 05 C 0729 |
| JEFFREY R. SCHWIERING, | ) | 05 C 0781 |
| JOSEPH J. SCOZZAFAVA, | ) | 05 C 0746 |
| KEITH TILLEY, | ) | 05 C 0745 |
| GREGORY A. WEISS, | ) | 05 C 0764 |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John W. Costello, not individually, but as Litigation Trustee under the Comdisco Litigation Trust, has sued defendants in these related cases seeking to enforce defaulted promissory notes. Defendants have answered the complaint, demanding trial by jury, raising sixteen affirmative defenses, and have filed a two count counterclaim for unjust enrichment or, in the alternative, breach of contract. Plaintiff has moved to strike the affirmative defenses and dismiss the counterclaim and to strike the jury demand. For the reasons set forth below, the motion to strike the affirmative defenses and dismiss the counterclaim is granted in part and denied in part. The motion to strike the jury demand is granted.

## BACKGROUND

Defendants are all former employees of Comdisco, Inc. During January 1998 each was asked to enter into to a stock option/loan plan called the Comdisco Shared Investment Plan ("SIP"), under which the employees ("Participants") purchased shares of Comdisco old common stock ("SIP Shares"). One hundred percent of the purchase price of the stock was financed by loans from lender banks ("Lenders") represented by First National Bank of Chicago (now Bank One) as their agent, to the Participants. The loans were guaranteed by Comdisco, as evidenced by master promissory notes ("SIP Notes"). Comdisco received the loan proceeds directly from the Lenders and held the SIP Shares as collateral. The guarantee was documented in a Facility and Guarantee agreement ("Facility Agreement"). The employees who agreed to participate in the SIP did not receive any of the loan proceeds (which went to Comdisco) or the SIP Shares.

In July 2001 Comdisco filed for bankruptcy, an event of default under the SIP Notes, causing Bank One, as agent for the Lenders, to accelerate the full amounts due under the notes. The Comdisco Plan of Reorganization ("Plan") authorized creation of a Litigation Trust, and the

appointment of a Litigation Trustee to, among other things, liquidate and distribute trust assets, including the "SIP Subrogation Claims," which were defined as the claims of Comdisco against any SIP Participant resulting from payments made to the SIP Lenders under the SIP Guarantee Agreement, or otherwise in respect of the SIP notes, against any SIP Participant. An initial form of the Trust Agreement was attached to the confirmed Plan, and the Confirmation Order expressly acknowledged that the Trust Agreement would be subject to amendment. The primary purposes of the Trust were: (1) liquidating Trust Assets; (2) litigating the SIP Subrogation Claims and; (3) making distribution of the net trust recovery as set forth in the Plan. The initial form of the Trust Agreement defined the Trust Assets as "the SIP Subrogation Claims to be transferred to and owned by the Trust pursuant to Article XII and Section 14.9(d) of the Plan . . .."

On December 7, 2004, the Trust Agreement was amended in anticipation of a settlement between Comdisco Holding Company as successor to Comdisco, Inc., and the Lenders, under which Comdisco paid the Lenders approximately $126,000,000 to satisfy its obligation under the Facility Agreement guarantee. The settlement was approved by the bankruptcy court on December 9, 2004. As part of that settlement the Lenders assigned all rights associated with the SIP Notes against the borrower to the Litigation Trustee. As noted, in anticipation of that settlement and assignment, the Trust Agreement was amended to include, as Trust Assets, "SIP Note Claims," which were defined as "any and all claims of the holders of the SIP Notes... against the makers thereof, and against any other person or entity primarily or secondarily liable under these instruments." In addition, all references to SIP Subrogation Claims in the Trust Agreement were amended to reference both the SIP Note Claims and the SIP Subrogation

3

Claims. After the assignments were effectuated, plaintiff brought suit against the defendants seeking to collect the full amounts due under the notes.

## DISCUSSION

**Motion to Strike Affirmative Defenses and Counterclaim.**

Defendants have raised sixteen affirmative defenses and two counterclaims, all of which are based on pre-petition conduct of the debtor, Comdisco. Plaintiff has moved to strike, arguing essentially that the Litigation Trust is a separate entity from Comdisco or reorganized Comdisco ("Comdisco Holding"), and that defenses against those entities are not available against plaintiff.

As a general rule, motions to strike affirmative defenses are disfavored because they often serve only to delay. *Heller Financial v. Midwhey, Powder Co.,* 883 F.2d 1286, 1294 (7th Cir. 1989). Such motions will not be granted "unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense and are inferrible from the pleadings." *Mid First Bank v. Graham,* 2006WL 1647405 at *2 (N.D. Ill. 2006).

As noted, defendants' affirmative defenses are based predominantly on pre-petition conduct of the debtor, Comdisco. Specifically, defendants assert that the entire SIP program was fraudulent and coerced upon them. The affirmative defenses and counterclaims set out in detail defendants' version of the implementation of the SIP program, including what they term the "oppressive tactics" used to force unreasonable SIP purchases, and certain alleged misrepresentations made by Comdisco. Defendants allege that neither Comdisco nor the banks conducted any due diligence, and neither Comdisco nor the banks turned down a single SIP application.

Without challenging any of defendants' factual allegations detailing their version of the implementation of the SIP program, plaintiff argues that the Litigation Trust is an entity separate and distinct from either Comdisco or Comdisco Holding and, therefore, defenses that arguably would be available against those entities are not available against it. Under plaintiff's theory, because the Litigation Trust received an assignment of the notes directly from the Lenders it is subject only to those defenses available against the Lenders. Because defendants' do not allege that the Lenders were involved in or aware of the alleged fraud by Comdisco, the asserted affirmative defenses based on pre-petition conduct of Comdisco would not be available against the Lenders. Therefore, according to plaintiff, those defenses are not available against the Litigation Trust.

This would be a viable theory if plaintiff was, in fact, a totally independent third party with no relation to Comdisco or Comdisco Holding. For example, if the bank assigned a note to an independent debt collection company, that company would be subject only to the defenses available against the bank. An assignee generally acquires all of the interest of the assignor and stands in the shoes of the assignor, subject to all legal and equitable defenses existing at the time of the assignment. *John O. Schofield, Inc. v. Nikkel,* 314 IL.APP.3rd 771, 783 (5th Dist. 2000). But that is not what happened in the instant case. After Comdisco filed a voluntary petition for relief under the bankruptcy laws, Bank One accelerated the SIP notes and filed a proof of claim in the bankruptcy action seeking to collect the amounts due under the guarantee from Comdisco. The bankruptcy court confirmed a plan of reorganization (the "Plan") creating Comdisco Holding. Comdisco Holding then settled with the bank. As part of that settlement Bank One agreed to assign all the rights to and interest in the SIP notes to Comdisco Holding or the Litigation Trust. The bankruptcy court approved the settlement and the assignment to the trust.

5

Defendants have alleged a unity of interest between Comdisco and the litigation trust and, despite plaintiff's protestation to the contrary, the documents at least arguably support defendants' position. For example, the Trust Agreement indicates that the "Trust Assets (as defined below) will be administered by the Trustee [Plaintiff], <u>as successor to and representative of, the debtors bankruptcy estates</u> . . .." (Emphasis added).

Moreover, in the Assignment Agreement, the "assignee acknowledge[d] that the Assigned Interests are being assigned subject to all matters in the alleged defenses with respect to the Facility Agreement, the Loans and the Notes as have been asserted by or on behalf of Comdisco Holding Co. Inc., the reorganized debtors (as defined in the Plan) or the Borrowers in or in connection with the bankruptcy proceeding . . .." The Assignment Agreement further provides that "this assignment is intended to effectuate the subrogation of Comdisco, Inc. to the rights of the assignor relative to Loans and Notes arising from such guaranteed payment and to facilitate the exercise by Assignee of such subrogation rights."

Thus, while plaintiff may stand in the shoes of the Lenders with respect to the notes, it also at least arguably stands in the shoes of Comdisco, Inc. under the terms of its creational documents. Had the Lenders assigned the notes directly to Comdisco (as a result of a settlement of a default occasioned by something other than a bankruptcy), Comdisco's attempts to collect on the notes would be subject to any defenses that existed as a result of its own conduct.[1]

---

[1] On May 2, 2001, defendant Flohr sued Comdisco and its Chief Operating Officer Nicholas K. Pontikes to recover damages arising out of Comdisco's alleged fraudulent inducement of Flohr and other Comdisco executives to enter the SIP. After Comdisco filed for bankruptcy protection, Flohr filed a proof of claim asserting the same claims as alleged in his complaint. Flohr eventually settled his claims with Comdisco, dismissing the fraud/duress claim against Comdisco without prejudice. As part of the settlement, Flohr reserved the right to assert any claims against Comdisco or the Litigation Trust should either attempt to bring any claim against him arising out of the SIP. He has asserted those claims in the instant action.

Because plaintiff arguably stands in the shoes of Comdisco, Inc., plaintiff may also be subject to those defenses. Accordingly, except as provided in footnote 2 below, plaintiff's motion to strike the affirmative defenses and dismiss the counterclaims is denied.[2]

**Motion to Strike Jury Demand.**

Defendants have demanded a jury trial on the complaint, affirmative defenses and counterclaim. Plaintiff has moved to strike the demand because the notes at issue each contain an express "Waiver of Jury Trial" provision. As all parties acknowledge, the Seventh Amendment's guarantee of the right to a trial by jury in civil cases may be waived if contracting parties knowingly and voluntarily agree to a waiver. *Tradewinds Aviation Inc. v. Jet Support Services, Inc*., 2004WL 2533728 at *3 (N.D.Ill. 2004) (citing *In re Reggie Packing Co., Inc*. 671 F.Supp. 571, 573 (N.D.Ill. 1987). Courts generally consider four factors in determining whether a party knowingly and voluntarily entered into a waiver: (1) the parties' negotiations, if any, concerning the waiver provision; (2) the conspicuousness of the provision; (3) the relative bargaining power of the parties; and (4) whether the waiving party's counsel had an opportunity to review the agreement. *Id.*

With respect to the first factor, defendants argue that the waiver provision was non-negotiable. To support this assertion they have submitted a joint declaration in which each states that "the SIP forms which I was required to sign in order to participate in the SIP were pre-printed forms, and I had no ability to negotiate the terms and conditions of the SIP option or promissory note with Comdisco." While it is true that the notes were on pre-printed forms, that

---

[2]The sixth affirmative defense, lack of standing, and sixteenth affirmative defense, failure to state a claim, have already been rejected by this court in Costello v. Haller, No. 05 C 0726 (N.D. Ill. Sept. 23, 2005). Therefore, the motion to strike is granted as to those defenses.

alone does not vitiate a waiver provision. The SIP was voluntary and defendants could have elected not to join. Moreover, although defendants say they had no ability to negotiate with Comdisco, the promissory note was a contract with the bank, not Comdisco, and no defendant has indicated any attempt to delete the waiver provision that was rejected by the bank. Plaintiff, however, has offered no evidence that the waiver was negotiable. Therefore, the court concludes that this factor weighs slightly in favor of defendants and against the finding of waiver. *Id*.

The second factor, conspicuousness of the provision, weighs in favor of plaintiff. A wavier provision is conspicuous when it stands out from the majority of the document. *Id.* at *4. In the instant case, the waiver provision is the last provision of the agreement, immediately preceding the signature, and is one of only three provisions set out in all capital letters and bold type face. That is sufficiently conspicuous. The defendants do argue that they were unaware of the waiver provision, but that simply means they elected not to read the document.

Third, the court must assess the relative bargaining power of the parties. Typically, sophisticated and experienced parties to a contract do not present bargaining power issues serious enough to invalidate a waiver provision. *Id*. In the instant case, all defendants were management level employees. Two defendants, Flohr and Herman, were officers of Comdisco. Although they allege the contrary, the SIP documents clearly indicate that the SIP was voluntary with no participation required. Each defendant was free to choose to participate or not to participate. Defendants do state that they felt compelled and/or pressured to enter the deal, but they present no support for that statement and the SIP documents all highlight that the program was voluntary. If the choice defendants faced was to obligate themselves to pay hundreds of thousands (and in some cases millions) of dollars or to leave their employment with Comdisco, the choice was theirs to make freely. Thus, this factor weighs in favor of plaintiff.

The last factor is whether defendant's counsel had an opportunity to review the contract. Defendants argue that they were given the SIP documents on January 30, 1998, and were required to sign them by February 1, 1998. Actually, they received a sample note on January 30, 1998 and were required to execute and return the final note by February 10, giving defendants ample time to review the note with a lawyer. The fact that most, if not all, elected not to do so, instead signing notes indebting themselves for large sums, does not support their argument that the waiver is invalid. As this court has previously stated in this case, the fact that defendants felt pressured to sign the notes without giving them any thought is all the more reason to simply say no. *Costello v. Haller*, 2006 WL 1762131 at *4 (N.D. Ill. 2006). In any event, the waivers are valid and plaintiff's motion to strike defendants' jury demand is granted.

## CONCLUSION

For the reasons set forth above, plaintiff's motion to strike affirmative defenses and dismiss counterclaims (#48) is granted as to affirmative defenses six and sixteen and denied in all other respects. Plaintiff's motion to strike defendants' jury demand (#39) is granted.

**ENTER:** **September 19, 2006**

_____
**Robert W. Gettleman**
**United States District Judge**